## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

---

ALAN FOWLER                              CIVIL ACTION NO. 15-2695

VERSUS                                   JUDGE ELIZABETH ERNY FOOTE

DELOITTE & TOUCHE, LLP                   MAGISTRATE JUDGE HORNSBY

---

### MEMORANDUM RULING

Before the Court is Defendant Deloitte & Touche, LLP's motion to dismiss or alternatively to transfer venue. Plaintiff filed suit against Deloitte & Touche, LLP ("Deloitte") alleging violations of the Family Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Louisiana Employment Discrimination Law ("LEDL"), and the Louisiana Wage Payment Act.  Record Document 12. Deloitte moved to dismiss under Federal Rule of Civil Procedure 12(b)(3) for improper venue, or alternatively to transfer the case to the Northern District of Texas. Record Document 15.

For the reasons discussed below, Deloitte's Motion to Dismiss or Alternatively to Transfer [Record Document 15] is **GRANTED in part** and **DENIED in part.** This case is hereby **TRANSFERRED** to the United States District Court for the Northern District of Texas, Dallas Division.

## I. Background

The parties agree on a few facts. Alan Fowler, Plaintiff, began working for Deloitte in 2006 and was terminated in August 2015. Record Document 12, pp. 2-4.

During his employment, Plaintiff held several different positions, working in different groups within the company and for different supervisors. Record Document 19-1, p. 2. In July 2013, Plaintiff moved his residence to Shreveport, Louisiana and continued working for Deloitte, although it has no office in Shreveport. Id., p. 3. In August 2014, Plaintiff was selected by Deloitte supervisor Kevin Lane ("Lane") to work for a Dallas-based client. Record Document 15-2, p. 4. Lane, who works in Deloitte's Dallas office, became Plaintiff's immediate supervisor until Plaintiff was terminated. Id.

For purposes of the venue analysis, the parties dispute where Plaintiff worked. Plaintiff claims he worked from his home office in Shreveport up to 45% of the time (Record Document 19-1, p. 4), while Defendant asserts that Plaintiff was required to work from the Dallas client's office at least 4 days a week. Record Document 15-2, p. 4. Plaintiff states that he began suffering from depression in 2014 and that he told Lane of his depression in March 2015. Record Document 12, p. 3. By July 2015, Plaintiff says he informed Lane that his depression had worsened and he needed to take a leave of absence from work. Id. Instead, Lane allegedly "actively discouraged" Plaintiff from taking leave. Id. Plaintiff was terminated on August 13, 2015. Id., p. 4. Plaintiff claims that he was fired because of his need for leave. He asserts that Defendant interfered with his right to take leave under the FMLA and retaliated against him for attempting to take FMLA-protected leave. Id., p. 8. He claims that his depression constitutes a disability within the meaning of the ADA, but defendant refused to discuss a reasonable accommodation for his disability and retaliated against him because of his need for

accommodation. Id., pp. 5, 7. He asserts parallel claims under the LEDL for refusal of reasonable accommodation and retaliation. Id., p. 4, 6.

Lane, Plaintiff's supervisor, adamantly denies any knowledge of Plaintiff's depression or need for a leave of absence. Record Document 15-2, p. 5. Defendant asserts that Plaintiff was fired because he submitted receipts for reimbursement for "lavish personal expenses." Record Document 15-1, p. 9-10. Plaintiff argues that the investigation into his expenses was pretextual, and that after his termination, Defendant reversed some $30,000 in charges to his corporate credit card, for which he is now personally responsible. Plaintiff claims this is a violation of the Louisiana Wage Payment Act. Record Document 12, p. 9.

Deloitte moved to dismiss all of Plaintiff's claims under Rule 12(b)(3) for improper venue, or alternatively to transfer the case to the Northern District of Texas under 28 U.S.C. § 1404. Record Document 15.

## II. Discussion

### A. Standard of Review

When a defendant objects that venue is improper, the burden is on the plaintiff to establish that his chosen venue is proper. Schmidt v. Delta Airlines, Inc., 1999 WL 179469, at *1 (E.D. La. Mar. 31, 1999). A court determines whether a plaintiff has met this burden on the basis of uncontroverted facts, which the court takes as true, and by resolving conflicts in the parties' affidavits in the plaintiff's favor. McCaskey v. Continental Airlines, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001).

Plaintiff has brought claims under the ADA, the FMLA, the LEDL, and the Louisiana Wage Payment Act. The parties rightly agree that the general venue provision of 28 U.S.C. § 1391 governs Plaintiff's FMLA and Louisiana state law claims, and that the specific venue provisions of Title VII of the Civil Rights Act govern Plaintiff's ADA claims. The Court takes each venue provision in turn.

B. Venue under 28 U.S.C. § 1391

Plaintiff brings claims under the FMLA, the LEDL, and the Louisiana Wage Payment Act. These claims all arise out of the same set of facts: Plaintiff's alleged disability, request for leave from work, and the circumstances surrounding Plaintiff's termination.

Venue for all of these claims is governed by the general venue statute, under which venue is proper in: (1) a judicial district in which any defendant resides, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) if neither of the above, any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b). As explained below, the focus of this analysis is the defendant's conduct. Because each of Plaintiff's claims arises out of the same alleged conduct of the defendant, the venue analysis for the FMLA, LEDL and Wage Payment Act claims is identical.

i. § 1391(b)(2): A Substantial Part of the Events Giving Rise to Plaintiff's Claim

Plaintiff first asserts that the second prong of § 1391 is satisfied in this case

because he worked out of his home office in Shreveport, he requested leave from Shreveport, he sought treatment for his depression in Shreveport, and he was in Shreveport when he was notified of his termination. Record Document 19, p. 10. Defendant argues that § 1391 focuses on where its conduct took place, not where the effects were felt. Record Document 15-1, p. 17. Neither party points to Fifth Circuit precedent on this issue.

The Eighth and Eleventh Circuits both emphasize that the purpose of the venue statute is to "ensure that a defendant is not haled into a remote district having no real relationship to the dispute." Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995); see Jenkins Brick Co. v. Brenner, 321 F.3d 1366, 1371-72 (11th Cir. 2003). Because the statute was enacted to protect defendants, the court concluded that, "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff." Woodke, 70 F.3d at 985; see Bigham v. Envirocare of Utah, Inc., 123 F. Supp. 2d 1046, 1048 (S.D. Tex. Dec. 6, 2000) ("In determining whether or not venue is proper, the Court looks to the defendant's conduct, and where that conduct took place. Actions taken by a plaintiff do not support venue."). Following similar logic, a court found that a Louisiana resident, who worked in her employer's Houston office and also "worked in Louisiana some over the years," could not establish that a substantial part of the events giving rise to her FMLA claim occurred in Louisiana. Craig v. Siemens Energy, Inc., 2011 WL 3240458, at *2 (W.D. La. June 22, 2011). The decision to terminate her, as well as the alleged failure of her employer to allow FMLA leave, occurred where her employer

was, in Houston. Id. The court focused on the actions of the employer, not the employee, and concluded that venue was not proper in the Western District of Louisiana. Id. at *3.

Plaintiff essentially argues the opposite, citing cases holding that a plaintiff could establish venue in the district where he resided and where he received word of his termination. Sparkler v. Home Infusion Solutions, LLC, 2013 WL 6476501, at *4 (E.D. Penn. Dec. 9, 2013); Dilmore v. Alion Sci. & Tech. Corp., 2011 WL 1576021, at *5 (W.D. Penn. Apr. 21, 2011). Plaintiff's reliance on these cases is misplaced. This reasoning departs from the purpose of § 1391, leaving open the possibility that a plaintiff could establish venue in any district in which he happened to physically be when he received the phone call or email about his termination. To allow a plaintiff to establish venue on the basis of his whereabouts when relevant events occurred would render the venue statute all but meaningless.

Moreover, both of Plaintiff's cases consider venue transfer under § 1404, not whether venue is proper under § 1391. One of the factors considered for transfer under § 1404 is "where the claim arose," but § 1391(a)(2) requires courts to analyze where a "substantial part" of the events giving rise to the claim occurred. These factors are not the same. As the Eleventh Circuit pointed out, § 1391 was amended in 1990, replacing "in which the claim arose" with the "substantial part" language. Jenkins Brick, 321 F.3d at 1371. "The old language was problematic because it was oftentimes difficult to pinpoint the single district in which a 'claim arose.' " Id. The Court need not pinpoint

where Plaintiff's claim arose, it need only evaluate whether a substantial part of the events giving rise to Plaintiff's claim occurred in the Western District of Louisiana.

In this case, Defendant had no control over where Plaintiff physically was when he requested FMLA leave, when he sought treatment, or when he received news of his termination. Even though he worked from home, Plaintiff's own actions cannot be determinative. This analysis must focus on Deloitte's actions. Plaintiff's supervisor worked in Dallas and assigned him to a client based in Dallas. The decision to investigate and later to terminate Plaintiff occurred, at least in part, in Dallas. Plaintiff points to no action taken by Defendant in the Western District. Defendant need not show that every decision-maker involved in Plaintiff's termination was located in Dallas, it need only show that they were not located in the Western District of Louisiana, which it has done. Considering the actions of Defendant, as § 1391 requires, the Court finds that a substantial portion of the events giving rise to Plaintiff's termination did not occur in the Western District of Louisiana.

ii. § 1391(b)(1): Personal Jurisdiction

In the alternative, Plaintiff argues that venue is proper because Deloitte resides in the Western District of Louisiana. Venue is proper under § 1391(b)(1) where the defendant resides. A corporate defendant resides in any judicial district in which the defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(c)(2). When a state has more than one judicial district, as Louisiana does, a corporate defendant resides in any district in which "its contacts would be sufficient to subject it to personal

jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Thus, the Court must determine whether Defendant has sufficient contacts with the Western District of Louisiana sufficient to subject it to personal jurisdiction if this district were a state. A federal court must satisfy both the statutory and Constitutional requirements of personal jurisdiction: the state long-arm statute must confer jurisdiction over the defendant, and the court's exercise of personal jurisdiction must be consistent with due process. Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291, 294 (5th Cir. 1999). The Louisiana long-arm statute is coextensive with the limits of constitutional due process, merging the statutory and constitutional analyses into one. La. R.S. § 13:3201(B); A&L Energy, Inc. v. Pegasus Group, 791 So. 2d 1266, 1270 (La. 2001).

Due process requires both that a defendant have sufficient minimum contacts with the forum state and that the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. Walk Haydel & Assoc., Inc. v. Coastal Power Production Co., 517 F.3d 235, 243 (5th Cir. 2008). A defendant's contacts with the forum state can support either general or specific jurisdiction. Marathon Oil Co., 182 F.3d at 295. General jurisdiction exists when the defendant's contacts with the state are "continuous, systematic, and substantial." Id. Specific jurisdiction exists when the defendant's contacts with the state arise from or are directly related to the cause of action. Id. Plaintiff does not distinguish between general and specific jurisdiction. The Court considers each in turn.

General jurisdiction requires that the defendant have continuous and systematic

contacts, a test that "is a difficult one to meet, requiring extensive contacts between a defendant and a forum." Johnston v. Multidata Systems Intern. Corp., 523 F.3d 602, 608 (5th Cir. 2008). The Supreme Court found that a Texas court could not exercise general jurisdiction over a defendant who purchased millions of dollars of helicopters and spare parts from a Texas company, sent its pilots to Texas for training, and sent management and maintenance personnel to Texas for technical consultations. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 411, 418-19 (1984). The Fifth Circuit applies the same strict bar. The court held that a defendant could not be subject to general jurisdiction when its contacts with Texas consisted of the sale of $140,000 of goods and service contracts to several customers in the state, advertising in national trade journals that reached Texas, and the attendance of defendant's employees at trade conventions in Texas. Johnston, 523 F.3d at 611.

Plaintiff asserts no contacts between Defendant and the Western District that would even begin to rise to this demanding standard of continuous, systematic, and substantial contact. Plaintiff claims Defendant's contacts with the Western District are: that Defendant directed Plaintiff to recruit employees and generate new business here, that Defendant contributed to political candidates here, that Defendant has employees here, and that Defendant conducts business through 28 entities registered in Louisiana, although he does not point to any entities located in the Western District. Record Document 19, p. 13. He also submits a "Deloitte 2014 Louisiana Tax Amnesty Alert" as evidence of Defendant's advertising in the state, although he offers no information

about the alert's distribution in the Western District. Record Document 19-3. The Court

also notes that the alert provides contact information for four Deloitte employees, all in

the company's Houston office. Id. Plaintiff also asserts that Deloitte has revenues of

over $35.2 billion per year, although he does not assert that any of this revenue comes

from the Western District. Defendant counters that it has no office, mailing address, or

telephone number in the Western District, that it owns no property here, has no assets,

and maintains no bank account, none of which Plaintiff disputes. Record Document 15-

1, p. 8. These contacts are limited at best, and are insufficient to establish general

jurisdiction over Deloitte in the Western District of Louisiana.

In order to exercise specific jurisdiction over Defendant, the Court must

determine that Defendant has minimum contacts with the Western District, and that

those contacts arise from or are directly related to Plaintiff's causes of action. Marathon

Oil, 182 F.3d at 295. Of all the contacts Plaintiff identifies, as set out above, the only

one related to his employment causes of action is his assertion that Deloitte directed

him, as part of his employment, to recruit employees and generate new business in the

Western District. Even if some of Deloitte's 28 entities registered in Louisiana were

located in the Western District, which Plaintiff does not claim, Plaintiff does not assert

that he has ever had any connection to them. Nor does Plaintiff assert he worked for or

with the alleged Deloitte employees located in the Western District that he found on

LinkedIn (assuming the self-reported information it contains is accurate), or that he has

any connection to the "Deloitte 2014 Louisiana Tax Amnesty Alert." Id. Plaintiff asserts

no connection to Deloitte's alleged political contributions in the Western District. This leaves only Plaintiff himself as Deloitte's relevant contact with the Western District.

Plaintiff relies on Davenport v. Hansaworld USA for the assertion that this is sufficient contact to establish personal jurisdiction. 2013 WL 5406900, at *7 (S.D. Miss. Sept. 25, 2013). In that case, the court found that it had specific jurisdiction over an employer where the employer specifically retained the plaintiff to work in Mississippi and the plaintiff carried out business activities for her employer in Mississippi, including allowing the employer to funnel thousands of dollars through her personal bank account at a bank in Mississippi when it did not have a U.S. bank account, and even served as the employer's registered agent for service of process in Mississippi. Id. Plaintiff, by contrast, does not assert that he was specifically retained to work in Shreveport, or that his work location was for Deloitte's benefit. "Specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of the general relationship of the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Guangzhou Ocean Shipping Co. v. Gulf & Orient S.S. Line, 1998 WL 720642, at *3 (E.D. La. Oct. 9, 1998). To argue that Plaintiff's cause of action arises out of Deloitte's contact with the Western District because Plaintiff sometimes worked there is to argue that Plaintiff can singlehandedly create Defendant's minimum contacts with the Western District. This is not the case. Deloitte does not have sufficient contacts in the Western District that arise from or are directly related to Plaintiff's causes of action. Therefore, for purposes of venue, this Court does not have

specific jurisdiction over Defendant.

Venue is proper under § 1391(b)(3) in any judicial district in which the defendant is subject to personal jurisdiction, if there is no district in which an action may otherwise be brought. Plaintiff does not claim that there is no other district in which this action could have been brought. § 1391(b)(3) is therefore inapplicable in this case. Because the Court lacks personal jurisdiction over Defendant, and because a substantial part of the events giving rise to Plaintiff's cause of action did not occur in the Western District of Louisiana, venue is improper under § 1391 for Plaintiff's FMLA, LEDL and Louisiana Wage Payment Act claims.

### C. Venue under the ADA

Claims under the ADA are governed by the specific venue provisions of Title VII of the Civil Rights Act. In re Horseshoe Entm't, 337 F.3d 429, 432 (5th Cir. 2003). Under this provision, venue is proper (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered," or (3) "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). Plaintiff asserts that venue is proper under the third prong. Plaintiff resided in Shreveport, Louisiana, and sometimes worked from home. Record Document 19, p. 2. He was also supervised by a manager in Dallas, "assigned" to the Dallas office, and worked for a client headquartered in Dallas. Record Document 15-2,

p.4. This arrangement raises the question: when a plaintiff maintains a home office, in which judicial district would he have worked but for his termination? Plaintiff claims he would have worked in Shreveport, where his home office is; Defendant claims he would have worked in Dallas, where his supervisor and his client were located, and where he was regularly required to be.

Defendant emphasizes that the use of the judicial district in the third prong, rather than a judicial district or any judicial district, makes clear that there is only one district in which it can properly be said that Plaintiff "would have worked." Record Document 15-1, pp. 20-21. Plaintiff does not argue that venue is proper in more than one judicial district. The parties instead disagree over which one district is the proper district.

Courts have considered the home office question on a few occasions. Plaintiff relies on Graham v. Spireon, in which the plaintiff, a sales manager, worked remotely in Illinois for an employer whose offices were in California and Tennessee. 2014 WL 3714917, at *1 (N.D. Ill. July 25, 2014). During his employment, the plaintiff worked mainly for a single client, who had corporate headquarters in Indiana and several franchise locations in Illinois. Id. After his termination, the plaintiff brought various Title VII claims against his former employer in the Northern District of Illinois, where he claimed that venue was proper because he worked out of his home office in Illinois, drove from his home to the employer's clients, and frequently traveled out of Chicago O'Hare International Airport on business travel for which his employer reimbursed him.

Id. at *2. The employer contended that its records indicated that the plaintiff's residence was in California and then in Florida. Id. The court found that assertions about residence alone were insufficient to overcome the plaintiff's choice of venue. Finding that he would have continued to work in Illinois, at his home office, but for his termination, the court held that venue was proper in the district where his home office was located. Id. at 3.

In an earlier case in the same district, the court similarly found that venue was proper in the district where the plaintiff worked out of her home office. Kempf v. Mitsui Plastics, Inc., 1996 WL 31179, at *1 (N.D. Ill. Jan. 25, 1996). The plaintiff was employed as a traveling salesperson with a territory stretched across ten states. Id. Because she alleged that she would have worked out of her home in Illinois but for the unlawful employment practice, the court found that venue was proper in Illinois. Id.

Defendant points to a case in which the plaintiff alleged that venue was proper in New Jersey because she sometimes worked from her home office in New Jersey, although she was employed as a law professor in Florida. Russell-Brown v. University of Florida Bd. Of Trustees, 2009 WL 4798230, at *2 (D. N.J. Dec. 7, 2009). The court pointed to the fact that Plaintiff's trips to New Jersey were not for the benefit of her employer, and that "schools tend to get little benefit from having teaching staff far from the students," and concluded that venue was proper not in New Jersey, but in the district where the law school was located. Id. at 2-3.

Here, the parties allege conflicting facts about Plaintiff's home office. Plaintiff

asserts in his affidavit that he worked from home 45% of the time after his move to

Shreveport and, in 2013, "was in Dallas for less than five days." Record Document 19-1,

p. 3. The rest of the time he was traveling for business. Id. Plaintiff further asserts that

Deloitte reimbursed him for travel to Dallas, as, under their reimbursement policy, they

do not do for the "costs of commuting to one's Primary Work Location." Id., p. 4. He

states that he "did not have an assigned office at Deloitte's Dallas office" and that his

work for a "Dallas-based client had nothing to do with [his] primary work location in

Shreveport. If [he] had been assigned to work on a project for a non-Dallas-based

client, [he] would have traveled to that client location." Id., pp. 4-5. Indeed, Plaintiff

asserts that in addition to his work for the Dallas-based client, he also worked for

Defendant's Strategic Risk Services group, reporting to a supervisor in the San Francisco

office. Id., p. 2. The Dallas client project was of "finite duration" and when it ended, he

would no longer have been required to travel to Dallas. Id.

Defendant alleges, through the declaration of Lane, Plaintiff's former supervisor

in Dallas, that Plaintiff was required "to be at the Client's office in Dallas Monday

through Thursday and, if needed, on Friday as well." Record Document 15-2, p. 4.

Defendant does not allege that Plaintiff worked exclusively for this Dallas client.

Defendant states that Plaintiff was "assigned" to the Dallas office when he was hired by

Deloitte, and that he "remained assigned to the Dallas office" when he moved his

residence to Shreveport. Record Document 15-2, p. 1. Lane's affidavit also states that

he is "unaware of any work performed by [Plaintiff] at his home, thus it was minimal

and for [Plaintiff's] convenience." Id., pp. 4-5. Defendant emphasizes that Plaintiff's move to Shreveport was for personal reasons, and not for the employer's benefit. Id., p.4. Plaintiff contends that his move was approved by four Deloitte partners, but does not claim his move was intended to benefit Deloitte. Record Document 19-1, p.2.

It is undisputed that Plaintiff was assigned to the Dallas office when he was terminated, and that he was working for a Dallas-based client. As Plaintiff asserts he was also working for a San Francisco-based supervisor when he was terminated, and Deloitte does not contradict this assertion, the Court also accepts this fact as true. It is further undisputed that Plaintiff's move to Shreveport was not for Defendant's benefit. It does not seem possible, however, that Plaintiff could both have worked from his home office in Shreveport 45% of the time leading up to his termination and also have worked from the Dallas client's office every Monday through Thursday. At this stage, the Court is required to resolve all conflicts in the affidavits in favor of the Plaintiff, and take as true Plaintiff's assertion that he worked from home 45% of the time prior to his termination, and traveled to Dallas and to other locations the rest of the time.

Although Defendant repeatedly emphasizes that Plaintiff was assigned to the Dallas office, this carries very little weight. Both sides agree that when Plaintiff worked in Dallas, he worked at the client's office in Dallas. If Plaintiff had been "assigned" to the Dallas office but worked exclusively, at Defendant's direction and for its benefit, at a client's office in, for example, Oklahoma, then Plaintiff would have worked in Oklahoma but for his termination. No case cited by either side places any weight on the office to

which the plaintiff was assigned; it is the place in which the plaintiff actually worked that matters. Here, Plaintiff actually worked in Shreveport, and traveled to a series of other cities, including Dallas, on a rotating basis, in the time leading up his termination. The Court finds that, taking Plaintiff's undisputed allegations to be true, and resolving all disputed facts in the affidavits in favor of Plaintiff, he has established that he would have worked in Shreveport but for his termination. Defendant's argument that this was not for its benefit is insufficient to overcome Plaintiff's choice of venue. Venue is proper in the Western District of Louisiana for Plaintiff's ADA claim.

### D. § 1404: Transfer

Having found that venue is improper in the Western District of Louisiana for Plaintiff's FMLA and Louisiana state law claims, but proper for Plaintiff's ADA claim, the Court has three options. The Court may dismiss the FMLA and Louisiana state law claims for improper venue, but retain the ADA claim, which would likely lead to duplicative litigation in multiple districts and added cost and inefficiency for both sides, as well as for the judicial system. This is an option of last resort. Alternatively, the Court may retain all claims under the doctrine of pendent venue, as Plaintiff advocates, or it may transfer all claims under 28 U.S.C. § 1404, as Defendant argues is proper.

Even when a case is brought in a proper venue, the Court may, for the convenience of parties and witnesses, and in the interest of justice, transfer a case to any district where the claims might have originally have been brought. 28 U.S.C. § 1404. Defendant moved to transfer all claims to the Northern District of Texas and

therefore, as a threshold matter, Defendant must show that venue is proper in the Northern District of Texas under both § 1391, for Plaintiff's FMLA and state law claims, and under the special venue provision of Title VII for Plaintiff's ADA claim. Plaintiff does not argue that this action could not have been brought in the Northern District of Texas.

Defendant claims that venue is proper under § 1391(b)(1) because it resides in the Northern District. As stated above, a corporate defendant resides in any district in which it is subject to the personal jurisdiction of the court, as determined by its minimum contacts with that district. § 1391(c)(2). Defendant asserts that it resides in the Northern District of Texas. Record Document 15-1, p. 25. Defendant's affidavits state, without contradiction from Plaintiff, that it maintains an office in Dallas, in the Northern District of Texas, with 584 employees, with contact with 450 clients. Record Document 15-3, p. 1. A large office with hundreds of employees and contact with hundreds of clients does support the conclusion that Deloitte is regularly conducting business in Dallas and has sufficient minimum contacts with the Northern District of Texas for it to fairly expect to be haled into court there. Venue would therefore be proper in the Northern District of Texas under § 1391(b)(1).

Venue must also be proper for Plaintiff's ADA claim in the Northern District of Texas. Under the specific venue provision of Title VII, as discussed above, venue is proper (1) in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, (2) in the district where employment records relevant to the employment practice are kept, or (3) where the plaintiff would have

worked but for the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(f)(3).
Defendant asserts that venue is proper under both the first and third prongs.

Having already concluded that Plaintiff "would have worked" in Shreveport but
for his termination, venue clearly does not lie in the Northern District of Texas on the
basis of the third prong. Defendant itself emphasized that there is only one proper
district in which Plaintiff would have worked. Record Document 15-1, pp. 20-21.

Under the first prong, an employment practice is "committed" where the alleged
discriminatory conduct occurred, rather than where its effects are felt. Kapche v.
Gonzales, 2007 WL 3270393, at *4 n. 4 (S.D. Tex. Nov. 2, 2007). Defendant states that
Mr. Lane, in the Dallas office, was involved in the decision to terminate Plaintiff. Record
Document 15-2, p. 4. And, indeed, the record shows that Plaintiff's employment was
controlled from the Dallas office: he was assigned to the Dallas office and he reported
to a supervisor in the Dallas office, with whom he communicated regularly about work
in Dallas. When Plaintiff was terminated, this decision came from the Dallas office, and
so Plaintiff's termination was "committed" in Dallas, and venue is proper in the Northern
District of Texas under the ADA. Plaintiff's claims could have been brought in the
Northern District of Texas.

In order to overcome the deference generally due to a plaintiff's choice of venue,
a defendant must show that the transferee venue is clearly more convenient than the
plaintiff's chosen venue. In re Volkswagon of Am., Inc., 545 F.3d 304, 315 (5th Cir.
2008). The Fifth Circuit considers several private and public interest factors when

determining whether transfer is in the interest of justice and for the convenience of the parties. Id. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." Id. The Court considers each factor in turn.

i. Access to Sources of Proof

There are two primary sources of proof in this case: witnesses and documents. Defendant argues that many of the witnesses who worked with Plaintiff and may have relevant information are located in Dallas, while none of their witnesses are located in the Western District of Louisiana. Defendant also argues that relevant documents are stored electronically and are more easily accessed from one of Defendant's offices, such as in Dallas. Plaintiff's witnesses – his wife and treating physicians – and relevant documents are located in Shreveport. The Court need not tally witnesses or numbers of documents on both sides. Plaintiff, by virtue of his personal decision to work from Shreveport, clearly has sources of proof in this district. However, everything else about Plaintiff's work, besides Plaintiff himself, is located outside this district, and much of it,

including coworkers, supervisors, employment records, and work-related documents, are located at Deloitte's office in Dallas. This factor weighs in favor of transfer.

ii. Availability of Compulsory Process

The second private interest factor considers the availability of compulsory process to secure non-party unwilling witnesses. <u>Tegrity Contrs., Inc. v. Spectra Grp., Inc.</u>, 2013 WL654924, at *4 (E.D. La. Feb. 21, 2013). Under Federal Rule of Civil Procedure 45, a federal court may command the appearance of a non-party who resides, is employed, or regularly conducts business in person within 100 miles of the courthouse. Not a single one of Defendant's witnesses resides within the subpoena power of this Court. Record Document 15-1, p. 27. Several of Defendant's witnesses reside within the subpoena power of the Northern District of Texas. Plaintiff resides in this district, but he is a party, and he indicates that his wife and treating physicians are willing witnesses. Record Document 19, p. 20. This factor weighs in favor of transfer.

iii. Cost of Attendance for Willing Witnesses

As for willing witnesses, Defendant identifies at least three of its supervisors in the Dallas area who may testify. There may be several other of Defendant's employees who would have to travel a significant distance to reach either Shreveport or Dallas (as would be the case from Tennessee, Connecticut, Virginia, New York, and Seattle). However, as Defendant points out, flights from these locations to Dallas are generally less expensive than are flights to Shreveport. Record Document 15-4. As the Court is tasked specifically to consider cost and not just distance, this factor weighs in favor of

transfer.

### iv. Other Practical Problems

Defendant identifies no additional practical problems favoring either district.

Plaintiff argues that the Northern District of Texas is inconvenient because Plaintiff's

counsel is not licensed in Texas. However, in the Fifth Circuit, courts are explicitly

prohibited from considering the location of counsel. In re Horseshoe Entm't, 337 F.3d

429, 434 (5th Cir. 2003). This factor is neutral.

### v. Court Congestion

Both Defendant and Plaintiff cite statistics showing that the median time from

filing of a case to disposition is shorter in the Northern District of Texas than in the

Western District of Louisiana, although they dispute to what extent. While the Court

recognizes that statistics "may not always tell the whole story," absent more

comprehensive metrics, this factor does seem to weigh in favor of transfer. In re

Genentech, Inc., 566 F.3d 1338, 1347 (Fed. Cir. 2009).

### vi. Local Interest

Plaintiff asserts that Louisiana has an interest in protecting its residents from

discrimination, while Defendant emphasizes that the localized interest exists where

there is a "factual connection" to the case. In re Volkswagon AG, 371 F.3d 201, 206

(5th Cir. 2004). Plaintiff is indeed a resident of Louisiana, but many of the underlying

events occurred in Dallas. As previous courts have acknowledged, it is entirely possible

for more than one district to have a "localized interest in a single cause of action."

Wallace v. Bd. of Supervisors for the Univ. Of La. Sys., 2015 WL 1970514, at *7 (M.D. La. Apr. 30, 2015). As both districts have some interest in this matter, this factor is neutral.

vii. Familiarity of the Forum with Governing Law

Plaintiff has brought claims under the ADA and the FMLA, both federal statutes with which both federal district courts are familiar. Plaintiff has also asserted two claims under Louisiana state law. While this Court does not doubt the ability of the Northern District of Texas to accurately consider issues of Louisiana law, this Court undoubtedly handles issues of Louisiana law more frequently. This factor weighs against transfer.

viii. Conflict of Laws or Application of Foreign Law

Plaintiff contends that his employment contract stating that disputes arising out of the contract will be governed by Texas law means that this case presents a conflict of laws issue because Defendant is attempting to deny Plaintiff's right to pursue claims under Louisiana law. While either court may eventually be required to take up the question of the choice of law provision of Plaintiff's contract, Plaintiff has not explained how that question would be analyzed or applied any differently in different federal district courts. This factor is neutral.

Considering all of these factors together, the Court finds that the Northern District of Texas is clearly more convenient. While it is certainly true that Plaintiff chose Louisiana as his home and as his work location, and as a result Louisiana has some interest in adjudicating his claim, as well as familiarity with his state law claims, Plaintiff

himself is the only part of this case located in this district; his employer's office, his

supervisor, his co-workers, and many records related to his employment are located in

Dallas. Plaintiff worked from home in the Western District of Louisiana, but not a single

other person involved in the events giving rise to this case lives or works in this district,

and many of them both live and work in the Northern District of Texas. Plaintiff's choice

of forum is not to be lightly discarded, but it cannot overcome considerations of fairness

to other parties and witnesses. In the interest of justice, this case should be transferred

to the Northern District of Texas.

## III. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss or Alternatively to

Transfer [Record Document 15] is **GRANTED in part** and **DENIED in part.** This case

is hereby **TRANSFERRED** to the United States District Court for the Northern District of

Texas, Dallas Division.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 24th day of March,

2017.


ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE